## Wytheville.

### Scott and Others v. Porter.

#### July 4, 1901.

Absent, Buchanan, J.

1. EXECUTORS AND ADMINISTRATORS—*Claims Against Estate—Ex Parte Settlements—Burden of Proof.*—An executor or administrator occupies a position antagonistic to the estate he represents with reference to independent claims preferred by him against the estate, and his *ex parte* settlements, though duly confirmed, are not even *prima facie* evidence in his favor of the correctness of such claim. The burden of proof is on him to establish his demand by proper proof just as if no settlement nad ever been made.
2. EXECUTORS AND ADMINISTRATORS—*Claims Against the Estate—Burden of Proof.*—An executor who prefers a claim against the estate of his testator for breach of a covenant to do a collateral thing has the burden of proof to establish the due execution of the covenant, the breach by the testator, and the amount he is entitled to recover by reason of such breach.

Appeal from a decree of the Circuit Court of Smyth county, pronounced September 11, 1900, in a suit in chancery wherein the appellants were the complainants, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*H. N. Bell* and *James H. Gilmore,* for the appellants.

*G. H. Fudge* and *White & Buchanan,* for the appellee.

HARRISON, J., delivered the opinion of the court.

In the year 1867 William Porter died, and in March of that year, his son, the appellee, James T. Porter, qualified as his executor. A number of *ex parte* settlements were made by the executor of his accounts before the proper commissioner; the first being in 1868, and the last in 1895. When this last settlement was made, the executor laid before the commissioner the following paper, purporting to be a covenant executed by his father, the testator, in 1861, and claimed credit for the loss of the services of the slaves mentioned therein:

" Know all men by these presents, that I, William Porter, of Rye Valley, Smyth county, and State of Virginia, doth this day covenant and agree with my son, James T. Porter, and grant him the right and privilege to live in the house with I and my wife, and to use and occupy it, and also the land I willed my beloved wife, Mary Porter, during her life, excepting only said life interest as security for her support in case anything should happen to our said son which would render him unable to support us. I also grant him the use of the five slaves I willed to her for life to govern and use for himself and he shall be legally entitled to all of the profits arising from both lands and negroes, and if either one or all of the slaves, namely, Henrietta, King, Joseph, Wilson, and Susan, should become disabled, die or escape servitude from any cause whatsoever, then and in that event my son is to have pay out of my estate at the rate of fifty dollars a piece a year for such lost service as long as we both live, and, after the death of one of them, he is to be paid at the rate of twenty-five dollars a year a piece as long as that one lives, if any of them should be lost, or their services lost to him, to be paid out of my estate at the final settlement of the same after both of our deaths: provided, however, that our said son, James T. Portor, doth comply with his promise to us or cause said promise to be complied with inviolate, to-wit, for the privileges and the use of the said slaves, and all the premises as above written. Our said son for and in consideration of the same doth promise and

agree to keep, board and take care of us during the remainder of our natural lives, to furnish us a comfortable room and necessary servants and comforts of life, to-wit: wood, water, well-cooked and wholesome diet, comfortable clothing, both for ourselves and the said five slaves, and to pay the taxes on both land and negroes, as well as on all of our personal property and the doctor bills for the negroes. We are to furnish our own beds and bed clothing, pay our own doctors' bills, and for tobacco and medicines. He, our said son, James T. Porter, also promises and agrees to loan or furnish us money whenever we call on him, but not to exceed an average of forty dollars a year. We only ask this of him so that we may feel free and have some pocket change to give to whom we chose. This money he is to take our receipt for, and it is to be paid to him at the final settlement of my estate with six *per cent.* interest from the date of said receipts. Now, if my said son, James T. Porter, fails to comply with his promises as heretofore written, then and in that event my covenant as heretofore written is broken, and this writing void, otherwise it shall remain in full force and virtue.

Witness my hand and seal this, the 25th day of March, 1861.

WILLIAM PORTER, (Seal).
Teste: James A. Scott."

The commissioner allowed the claim, and gave the executor credit for $458.00 as the value of the services of the slaves during the joint lives of William Porter and his wife; and $3,375.00 as the value of such services during the life of Mrs. Porter, the survivor; the result of this settlement being to bring the estate in debt to the executor in the sum of $2,012.35 as of March 1, 1895.

This suit was brought by the appellants, grand-children of the testator, to surcharge and falsify this settlement. The bill denies the right of the executor to credit for any sum by virtue of this alleged covenant, and charges that William Porter never

signed or delivered any such paper to the appellee, or to any one for him.

The genuineness of this covenant, and the right of the executor to the credits based thereon constitute the subject of this controversy.

The pleadings having put these questions directly in issue, there can be no doubt, that ordinarily, the burden of proof to sustain them was upon the appellee, James T. Porter. It is contended, however, that inasmuch as the bill was filed to surcharge and falsify an executional account, which had been confirmed by the court, and to strike therefrom certain items allowed by the commissioner, the account should be treated as *prima facie* correct and conclusive as to all matters contained therein, and that the burden is upon the complainants to show that the controverted items are incorrect.

These controverted claims, arising from the covenant in question, constitute independent liabilities in favor of the executor against his father's estate, and with respect thereto he occupies a position antagonistic to the estate, and cannot represent it.

In no case where an executor holds an interest adverse to the estate he represents, that does not grow out of its due administration, such as costs of administration and the like, and no opportunity has been given to those to be affected thereby to resist the same, will the law permit the executor to prefer and have allowed such claim in an *ex parte* settlement, and, when its validity is assailed in a proper proceeding, shield himself behind the principle that the settlement is *prima facie* correct, and thus shift the burden of establishing the claim by proper proof, and impose upon his *cestui que trusts* the burden of showing that the demand is invalid, and should not be allowed.

Under such circumstances, the executor stands in the position that he would if the settlement had not been made, and must establish his demand by proper proof. A contrary principle would place heirs and devisees at the mercy of executors and

administrators.  *Leavell* v. *Smith's Exor., ante* p. 374.  See also *Fuller* v. *Conrad,* 98 Va. 16.

We are further of opinion that, in the case at bar, when the executor has met the issue, and established the genuineness of the covenant in question, then the burden is further upon him to show that he has performed the obligations imposed upon him by the covenant, and the amount he is entitled to recover by virtue thereof.  The evidence in this case is very meagre and unsatisfactory, resulting it may be from the erroneous view held by the lower court that the burden was upon the appellants to show the invalidity of the claims allowed the executor.

We are therefore of opinion that it would not be just to the parties concerned for the court to attempt to determine issues of such gravity, without giving the parties an opportunity to make out their case with a correct understanding as to where the burden of proof rests.

We are further of opinion that the issues made by the pleadings in this case should be determined by a jury.  The decree complained of must, therefore, be reversed, and the cause remanded with direction to the Circuit Court to order an issue out of chancery to determine, first, the genuineness of the alleged covenant; and second, whether or not the appellee has performed the obligations imposed upon him by such covenant, and the amount that he is entitled to recover by virtue thereof.  And in the trial of these issues, James T. Porter, the appellee, shall occupy the position of plaintiff and the appellants that of defendants.

*Reversed.*