# Richmond.

KENNETH P. BUTT, A. H. FOREMAN, N. G. WILSON AND JAMES G. MARTIN, ADMINISTRATORS OF FREDERICK M. HALSTEAD, DECEASED, ET ALS, V. TULLEY D. MURDEN AND W. TILDEN SMITH.

March 13, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*James G. Martin* and *Pender, Way & Foreman*, for the appellants.

*N. T. Green*, for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

For an understanding of the sole issue presented in this case reference should be made to *Smith and*

*Murden, Executors* v. *Ottley*, 144 Va. 406, 132 S. E. 512, in which the will of Frederick M. Halstead was held null and void because of his mental incapacity. Smith and Murden (appellees here) were named as executors in the Halstead will, and it was admitted to probate by the clerk of the circuit court. From this order of the clerk an appeal was taken by the heirs at law and distributees to the Circuit Court of Norfolk county. The single issue raised (mental capacity) was submitted to a jury. Their finding was that the paper was not the true last will and testament of Halstead, and the court entered judgment thereupon. An appeal to this court was allowed and the judgment was affirmed. Thereafter the administrators of Frederick M. Halstead qualified and the executors under the void will settled their accounts before a commissioner as required by statute, Code, chapter 221. The administrators filed exceptions to these accounts, raising the precise question which is raised by this appeal—that is, they denied the validity of the allowances made to the executors for attorneys' fees and other expenses incurred by them in their effort to maintain the Halstead will. The trial court overruled those exceptions and a writ of error was allowed upon the petition of the administrators. It was thereupon held by the Special Court of Appeals (*Butt* v. *Murden*, 149 Va. 518, 140 S. E. 663) that the writ of error should be dismissed as having been improvidently awarded, without prejudice to any persons interested to bring a suit to surcharge and falsify the accounts.

Then this bill was filed to surcharge and falsify the accounts of the executors to the amount of $17,396.68, covering items alleged to have been illegally paid to the three attorneys for the executors for their legal services in the original contest over the will, and

expenses incidental to that contest, including stenographic services, fees to expert witnesses, printing in the appellate court and similar items. The record was voluminous, the witnesses many, the contest bitter and prolonged. It is insisted that all of these expenses were illegally allowed, and that the executors should be held personally responsible therefor. It is contended that executors under a will which is ultimately declared void cannot pay necessary legal expenses incurred in an unsuccessful effort to maintain the will of which they are executors, even after it has once been admitted to probate, and that the usual rule as to costs between parties should be applied. While it is conceded that there is conflict in the authorities in contested will cases, it is insisted that the question is set at rest in Virginia in favor of the heirs at law (appellants) by the case of *McCormick* v. *Elsea*, 107 Va. 472, 59 S. E. 411, 412.

In that case there was a suit in equity, the object of which was to establish a will alleged to have been lost, mislaid or abstracted. The contention of the plaintiffs was that under that lost will the whole of the estate had been devised and bequeathed to them, and this claim was successfully resisted by eight of the nine distributees. The court said this as to the fees claimed: "Except in rare instances, the power of a court to require one party to contribute to the fees of the counsel of another party must be confined to cases where the plaintiff suing in behalf of himself and others of the same class discovers or creates a fund which enures to the common benefit of all; but the discretion vested in the court should never be exercised in a case where the interests of the party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted."

We cannot agree that this court, in deciding that case, either considered or intended to determine that under no circumstances could an executor named in a will which had been actually probated be allowed proper attorneys' fees when undertaking, in good faith, to maintain the will. The authorities are not in harmony, and while efforts. have been made by the annotators to formulate general rules, it should be conceded that the cases cannot be reconciled. It would be a thankless task to undertake extended discussion or citation of the authorities.

In *Dodd* v. *Anderson*, 197 N. Y. 466, 90 N. E. 1137, 27 L. R. A. (N. S.) 336, 18 Ann. Cas. 738, which is cited and relied on for the appellants, the Court of Appeals, reversing a decision of the appellate division, held that the allowance could not be made under the circumstances of that case; but the emphasis there was placed upon the fact that the will had never been probated, so that the executor never had any letters testamentary, or any duty to perform with reference to the property or to the alleged will, except to offer it for probate. It is impossible to read the opinion without reaching the conclusion that had the will been probated, as the Halstead will had been, reasonable allowances would have been made to the executor whose duty it would have been to resist the attack upon it. There is a note to that case, 18 Am. & Eng. Anno. Cases 741, in which these general statements appear as to the majority view even when there is an unsuccessful attempt to probate:

"In the majority of jurisdictions passing upon the right of a person named as executor in a will to recover from the estate moneys expended by such executor in an unsuccessful attempt to probate the will, it is held that if such person carries on the litigation in a *bona*

*fide* attempt to probate the will, he is entitled to receive from the estate moneys therein expended."

*Roy* v. *Roy*, 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696, is among the many cases cited in support of that statement.

■ Then as to the unsuccessful resistance of attack after probate, this in the same note is said to be the majority view: "The decided weight of authority supports the rule indicated in the reported case, to the effect that after the will has been duly probated it is the duty of the executor named therein to defend suits brought to revoke such probate or to test the validity of the will, and if he acts in good faith he is entitled to receive from the estate his necessary expenditures in defending such attack." Cases from numerous jurisdictions are cited to support that view.

The subject is elaborately annotated in *Wilson* v. *Wilson*, 188 Ky. 53, 221 S. W. 874, 10 A. L. R. 783.

■ It is impossible to examine the cases and formulate therefrom rules which are applicable to all cases. Positive and dogmatic pronouncements should be avoided. Much depends upon the peculiar circumstances. If the executor acts in good faith, he is generally entitled to reasonable allowances. In most contests, however, it is merely a question between persons who take the estate if the will is established and those who will take it under the law of descents and distributions if not established. In such cases the executor should leave these interested parties to conduct the litigation at their own expense and to abide its results without imposing substantial charges against the estate represented by the executor.

This case has peculiar features. The estate was a large one, estimated by some to be worth $500,000.00. With one insignificant exception, there was no person

to be directly benefited by the will because almost the entire estate had been thus devoted to pious, charitable or reverential uses. A certain portion of land was to be set apart as a cemetery to be used as a place of interment for the remains of the testator, his father, mother, uncle and aunt; $2,500.00 for the erection of a monument at Camden Court House, North Carolina, to the memory of the members of Company B, 68th North Carolina Regiment, C. S. A., commanded by Captain Halstead; $2,500.00 was to be set apart and the income used in taking care of the family burying ground; and the residue of the estate was to be used in the construction of a monument to be known as the Halstead monument, to be erected and stand as a memorial and debt of gratitude from the testator to his father, mother, uncle and aunt, in which should be constructed a vault or receptacle for the remains of his father, mother, uncle and aunt, into which their remains should be removed and interred along with the testator's own remains; and that the monument standing in the family burying ground over the remains of his uncle, Matt B. Halstead, and aunt, Vamilla Old Halstead, should be removed by his executors to the plot of land on which the Halstead monument was to be located.

So that there being no living persons who had any direct and substantial interest under the will and no persons except the executor who were charged with any duty whatever as to it. The will was peculiar and doubtless unwise, but this did not relieve the executors of their responsibility, or of their duty to represent the testator, charged as they were by the will with carrying his purposes into effect in so far as it might be legally possible to do so. It could not have been certainly foretold either by expert or layman

until the decision of this court in the original case whether the will was valid or invalid. Numerous witnesses testified in the original case that the testator was perfectly capable of making a will at the time of its execution in 1918. It was drawn by a reputable attorney of unquestioned integrity, witnessed by this attorney and another member of the Portsmouth bar of outstanding ability and character, both of whom testified that in their opinion the testator had testamentary capacity at the time of the execution of the will. Unless these executors had defended that contest, it would have gone by default, for there was no one else to incur the expense of doing so.

Under the peculiar circumstances of this case, we cannot say that the trial court abused its discretion in making the allowances which it is conceded are not only reasonable in amount but were necessary in order to make a proper defense to the vigorous attack upon the testamentary capacity of the testator; indeed, we think the decree appealed from was proper.

The learned trial court judge (Hon. Allan R. Hanckel) has thus expressed himself:

"Even if it is not the legal duty of the executor to propound the will for probate, it is eminently proper that he should do so.

"When he has done so he becomes the personal representative of the testator, empowered and required to execute the will.

"In performing that office he is held to the requirement to act with a reasonable degree of diligence and prudence.

"So far there is, and can be, no dispute.

"When it comes to the duty of defending the will when attacked there is diversity of opinion among the courts.

"Our Court of Appeals seems to intimate, if not definitely hold, that the executor should defend the will, and is entitled at least to costs out of the estate if he acts in good faith in its defense. *Roy, et als.* v. *Roy's Ex'r*, 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696.

"What prudence demands and what good faith involves is, of course, largely to be determined by the conditions of the estate and the particular facts of the individual case. And I do not think that any fair minded man could read the record in this case and not be impressed with its difficulty and doubtfulness on the facts of testator's testamentary capacity. And for that reason I am of opinion that the executors were clearly justified in defending the will against attack to the very last court open to them. It seems to me that as personal representatives of this estate they acted in good faith and as ordinary business men in employing counsel to aid them.

"For this reason I am of opinion to overrule the motion to surcharge their accounts."

*Affirmed.*