## CIRCUIT COURT OF HENRICO COUNTY

In re Estate of
Alice R. Wicker

March 11, 2002

Consolidated Case Nos.

CH01-1248, CH01-1253, CH01-1260

BY JUDGE CATHERINE C. HAMMOND

This matter is before the Court on exceptions to the Report filed October 26, 2001, by the Commissioner of Accounts ("the Report"). Exceptions were filed by (i) The Childhood Language Center at Richmond, Inc. ("The CLC") (Case No. CH01-1248), (ii) Richard Tyler McGrath (Case No. CH01-1248), (iii) The Salvation Army (Case No. CH01-1253), and (iv) Sylvia Wicker Tate Titcomb (Case No. CH01-1260). The three cases were consolidated by Order entered December 3, 2001, and argued by counsel on briefs and orally on February 19, 2002. In addition, this Court heard some evidence *ore tenus* on February 19, 2002.

By letter dated February 25, 2002, counsel advised that the exceptions are withdrawn with respect to the attorney's fee demand by The CLC and Mr. McGrath, which demand the Commissioner had not allowed. Accordingly, the remaining issues before the Court are whether the Commissioner erred as to certain other demands against the Estate: (i) a claim for attorney's fees by Lisa Tate Sattlemaier, (ii) a claim for attorney's fees by Mrs. Titcomb, and (iii) a claim for a commission by Mrs. Sattlemaier.

Alice R. Wicker died on September 11, 1996. The Clerk entered an Order of probate dated September 17, 1996, by which Mrs. Wicker's granddaughter, Mrs. Sattlemaier, qualified as Executrix. The testamentary documents admitted to probate were an October 1993 will and an April 1994 codicil. The

October 1993 will named Mr. Malcolm Christian as Executor; but the codicil named Mrs. Sattlemaier. Mrs. Sattlemaier's mother, Mrs. Titcomb, then filed a Bill of Complaint on September 24, 1996, to challenge the October 1993 will and the codicil.

Mrs. Titcomb also moved to remove Mrs. Sattlemaier as Executrix of the Estate. At a hearing on September 27, 1996, the Court enjoined Mrs. Sattlemaier from disbursing Estate assets without Court approval. The removal motion was heard in December 1996 and granted upon a showing of "good cause." Joining in Mrs. Titcomb's removal motion, as evidenced by their counsel's endorsement of the Order, were Mrs. Titcomb's sister, Ruth Wicker Dunn, as well as The CLC and The Salvation Army. The Circuit Court removed Mrs. Sattlemaier by Order entered January 21, 1997. In the same Order, the Court appointed Mr. Greer Jackson as Curator of the Estate, pursuant to Va. Code § 64.1-93.

There followed two jury trials to establish Mrs. Wicker's intent. In the second trial, several writings were proposed for the jury to consider as her true last will and testament. The jury found that Mrs. Wicker's will was made on June 9, 1993, thereby rejecting the October 1993 will and the codicil which named Mrs. Sattlemaier as Executrix. An appeal followed, but no writ was granted.

On March 2, 2001, Mr. Christian qualified as the named Executor under the June 1993 will. The will makes bequests of personal property to Mrs. Wicker's two daughters, Mrs. Titcomb and Mrs. Dunn. But most of the multimillion-dollar estate passes to four residuary beneficiaries, each of them a charitable organization: The CLC, the Salvation Army, the Virginia Home for Boys, and the Lift the Burden Fund.

There now are two demands for attorneys' fees to be paid from the Estate, one by Mrs. Titcomb and one by Mrs. Sattlemaier.[1] The Commissioner did not allow the former but did allow the latter, as a Class 1 administrative expense. The first question in the legal analysis of the exceptions is what legal services were provided by the attorneys to the demanding parties. This should be answered with the required deference to the Commissioner's factual findings.

The Commissioner found that Mrs. Titcomb's demand was for reasonable fees paid to counsel "who represented her throughout the litigation, Michael P. Lafayette." (Report p. 3.) The Commissioner found that Mrs. Sattlemaier's demand was for reasonable attorneys' fees "incurred during the two jury trials and

---

[1] Mrs. Dunn also presented a demand for her attorney's fee, which was not allowed by the Commissioner. However no exception was filed. Harry Cohn, Esq., presented a claim for fees at the hearing on February 19, 2002. However, this was not part of the Report or exceptions thereto and is not before the Court.

the appeal of the jury's verdict to the Virginia Supreme Court."[2] (Report p. 7.) From these findings, it can be summarized that all of the fees at issue were for legal services respecting the dispute over Mrs. Wicker's testamentary intent. However, the Commissioner decided in favor of one demand and not the other.

In disallowing Mrs. Titcomb's claim, the Commissioner reasoned that she was a "non-prevailing party" who had litigated against establishment of either the June 1993 will or the October 1993 will and the codicil. (Report p. 5.) The Commissioner pointed out that Mrs. Titcomb advocated at trial for a result (intestacy) that would have translated into the greatest monetary benefit to Mrs. Titcomb. He rejected the argument that her advocacy benefited the charities that now are the residuary beneficiaries.

In allowing Mrs. Sattlemaier's claim, the Commissioner discounted the similarities between it and the demand of Mrs. Titcomb. In both cases, the legal services were provided to litigants in a will contest. In both cases, the demand for fees was presented by a non-prevailing party. And, in both cases, that party advocated for the result that would produce maximum personal gain to her from the assets of the Estate. Nevertheless, the Commissioner differentiated because Mrs. Sattlemaier had a dual role as potential beneficiary and as Executrix. The Commissioner concluded that Mrs. Sattlemaier's attorneys' fees should be reimbursed by the Estate because they were incurred as part of her duty to defend the testamentary documents she offered for probate. The Commissioner relied on *Butt v. Murden*, 154 Va. 10 (1930), for his analysis. Parties opposing Mrs. Sattlemaier's demand also rely on *Butt v. Murden* as authority for their position. Accordingly the issue before this Court is principally a question of law.

The general rule is that no allowance should be made out of the estate for an attorney whose services benefit an individual interested in the estate. 31 Am. Jur. 2d, *Executors and Administrators*, §§ 438, 447 (1989); 3 *Harrison on Wills and Administration for Virginia and West Virginia*, § 514 (3d ed. 1989).

> Counsel fees are not allowed where the litigation is between co-beneficiaries in the estate. As a general rule, in such cases it is the duty of the personal representative to stand neutral, as the estate is not in any sense interested in such a controversy.

Harrison at 77. The distinction is drawn between services that benefit the Estate, through legal representation of the administrator or executor, and

---

[2] Mrs. Sattlemaier testified at the Commissioner's hearing that her attorney's fees were incurred after she was removed as Executrix and the curator was appointed. (Tr. of July 9, 2001, p. 54.)

services performed personally for a potential beneficiary of the Estate. "[C]ounsel for a beneficiary cannot claim payment out of the estate, though he may be paid out of his client's share, or from the portions of those beneficiaries who have joined in the proceedings, or have acquiesced in the attorney's exertions." *McCormick v. Elsea*, 107 Va. 472 (1907) (quoting 4 Cyc. 1013).

Counsel for Mrs. Sattlemaier vigorously argues that she had a legal duty to defend the October 1993 will and the codicil even after she was removed as Executrix. His argument relies on *Butt v. Murden*, but his brief does not discuss the facts of that case or its significance in light of the general prohibition against allowances for anything other than fiduciary expenses. The Supreme Court has addressed the subject of when attorney's fees can be paid from estate assets in at least four reported decisions. These must be considered in detail.

In *McCormick v. Elsea*, Mr. Elsea died intestate, survived by his widow and eight children. One month later, Mrs. Elsea died testate. The executor named by Mrs. Elsea was her son-in-law, Mr. Smallwood. He hired an attorney, McCormick, to prosecute an action by one daughter (Mrs. Smallwood, the executor's wife) to establish her mother's will. Mrs. Smallwood would gain more under the will than otherwise. Her brothers and sisters resisted this suit. At a jury trial, McCormick succeeded in establishing the will. But the desired assets did not pass by the will, leaving the other children victorious as a practical matter. On appeal, the court was asked to decide whether McCormick should receive an attorney's fee from the Estate for services performed for the executor. The answer was no, and the court cited the general rule, quoted above. The court also reasoned that the beneficiaries of the Estate (the other Elsea children) should not be forced to pay "as fruits of their victory" for the attorney whose services were aimed at depriving them of their interest in the Estate.

In *Clare v. Grasty*, 213 Va. 165 (1972), it was error for the circuit court to approve the Commissioner's allowance of counsel fees for services that benefited the executor personally. The court put the question this way "What executorial duties was [the Executor] seeking to perform when he employed counsel?" *Id.* at 170. When the executor, Grasty, obtained legal services to defend two suits to remove him, those services were for Grasty's personal benefit and, for that reason, could not be charged to the Estate. In contrast, there was no error in the trial court's approval of an attorney's fee for "services rendered in the general administration of the estate." *Id.* at 172.

In *Perrow v. Payne*, 203 Va. 17 (1976), the Commissioner of Accounts approved an attorney's fee for legal services rendered by the executor to the

estate (apart from duties rendered as executor). The circuit court allowed an attorney's fee but reduced the amount. But the assignment of error that pertains to the case at bar was the executor's contention that his attorney should have been allowed a fee also for representing the executor in the hearings on the exceptions to his accounting. The court rejected this demand. Again, the services were personal. *Id.* at 30-31.

In *Butt v. Murden*, 154 Va. 10 (1930), the executors named in Mr. Holstead's will qualified pursuant to an instrument prepared and witnessed by attorneys six years before Mr. Holstead's death. Within a short time, thirty-two heirs at law and distributees brought suit to avoid the will because, they said, Mr. Holstead lacked mental capacity. In a lengthy trial, the evidence showed that Mr. Holstead spent the later years of a long life living in rural seclusion with his housekeeper, who was a beneficiary under the will. *Smith v. Ottley*, 144 Va. 406 (1926).[3] His house had a room on the back that was an "arsenal," he kept forty ferocious dogs, and visitors were unwelcome. The jury agreed that Mr. Holstead's mind was unsound and found that the paper admitted to probate was not his true last will and testament. 144 Va. at 408. The executors under the void will claimed an attorney's fee incurred as part of their effort to establish the writing. The heirs at law objected, and the case journeyed to the Supreme Court of Virginia.

The court allowed an attorney's fee from the Holstead Estate even though the executors had not prevailed in their suit. However, in doing so, the court adhered to the principle that the fee is allowed when the executor's employment of counsel is part of the executor's fiduciary duty. In *Butt v. Murden* there was no one to represent the testator according to his written expression except for the executors.

> So that there being no living persons who had any direct and substantial interest under the will and no persons except the executor who were charged with any duty whatever as to it. The will was peculiar and doubtless unwise, but this did not relieve the executors of their responsibility, or of their duty to represent the testator, charged as they were by the will with carrying his purposes into effect in so far as it might be legally possible to do so. It could not have been certainly foretold either by expert or layman until the decision of this court in the original case whether the will was valid or invalid.

---

[3] Undoubtedly the heirs at law were unhappy that Mr. Holstead left the residue of his substantial estate for the construction of a memorial to be known as "The Holstead Monument." 144 Va. at 409.

Numerous witnesses testified in the original case that the testator was perfectly capable of making a will at the time of its execution in 1918. It was drawn by a reputable attorney of unquestioned integrity, witnessed by this attorney and another member of the Portsmouth bar of outstanding ability and character, both of whom testified that in their opinion the testator had testamentary capacity at the time of the execution of the will. Unless these executors had defended that contest, it would have gone by default, for there was no one else to incur the expense of doing so.

154 Va. at 16. In other words, had the executors not litigated, no one else would have defended the will. Furthermore, in defending the suit brought by the heirs, Mr. Holstead's executors had no personal interest in how the contest over his will came out. One of the executors, Smith, was Mr. Holstead's physician. 144 Va. at 407. He did not stand to gain or lose if the will was upheld.

In contrast to the circumstances of *Butt v. Murden* (which circumstances the court called "peculiar"), there were parties interested in defending Mrs. Wicker's October 1993 will and the codicil. Moreover, Mrs. Sattlemaier did stand to gain or lose, personally, depending on the jury's view of the different testamentary writings introduced at trial.

It cannot be said here that there was no one other than the Executrix named in the codicil to come forward on behalf of it and the October will. Mr. Christian was named as Executor in the October 1993 will. Another family member, Ben Moore, advocated to establish the October 1993 will and the codicil. He appeared at trial and was represented by his own counsel, thus advancing the testator's expression in those writings. Further, Mrs. Sattlemaier was not Executrix at the time the fees were incurred, and it was in Mrs. Sattlemaier's personal interest to participate in the will contest. She had a valid legal theory with credible evidence to support it. It would have been wholly irrational for Mrs. Sattlemaier to ignore the litigation given her potential distribution under the October 1993 will and the codicil. But in her defense of those writings, unlike the executors in *Butt v. Murden*, Mrs. Sattlemaier was not a neutral fiduciary who was defending the testator. She was an interested party, and her attorneys' fees were for the advancement and protection of her interests.

The case at bar is more akin to *McCormick* than to *Butt*, not only because Mrs. Sattlemaier was a principal beneficiary under the October 1993 will and the codicil, but also because she lost at trial to the persons who would now have to pay the fees to her counsel. This configuration of parties is just like

*McCormick.* In rejecting the attorney's fee demand in that case, the court observed that it was too facile for the claimant to rely on the fact that it was the executor who had hired the attorney. That fact, that incident of the contract, did not say anything meaningful about what the attorney's purpose was, or who would be losing if the Estate were compelled to pay his fee.

> In this case the [attorney], who is admittedly a lawyer of high character, relies wholly on his contract with the executor of [Mrs.] Elsea, apparently overlooking the effect on his contention of the material circumstances adverted to, namely, that no assets came into the hands of his client, or under his control by virtue of his office of executor, and that the interests of his clients were opposed to those of [the estate's beneficiaries] from whom he seeks compensation.

*McCormick v. Elsea,* 107 Va. at 475. *See also Wiglesworth v. Taylor,* 239 Va. 603, 609 (1990) (co-trustees of trust cannot obtain reimbursement for attorney's fees from trust beneficiary when co-trustees' interest was hostile to interest of beneficiary). Likewise, the Commissioner here relied on the fact that Mrs. Sattlemaier was the Executrix at the time she was sued, but overlooked the fact that she did not enhance the Estate through the litigation, and her interests were hostile to those of the charities who now would have to pay the fees of Mrs. Sattlemaier's attorneys.

For these reasons the Court finds that no attorneys' fees should be allowed from the Estate to reimburse either Mrs. Sattlemaier or Mrs. Titcomb.

The Commissioner allowed compensation to Mrs. Sattlemaier in the amount of $35,000 for the four-month period she served as the Executrix. This was supported by the evidence. Although objections have been asserted to the amount and the duplication of payments to the curator and Mrs. Sattlemaier, the Court cannot find as a matter of law that the Commissioner's decision is in error. The matter of the reasonableness of the compensation is a largely factual determination.

The endorsement of counsel is not required as notice of the issues has been thorough and the objections have been stated in briefs and in oral argument. All of the parties' objections are preserved.

Let the Clerk forward an attested copy of this Order to Eddie Cantor, Esquire Malcolm M. Christian, Esquire, Richard Tyler McGrath, Esquire, Michael P. Lafayette, Esquire, James Kauffman, Esquire, Ian J. Wilson, Esquire, David R. Simonsen, Jr., Esquire, Harry Cohn, Esquire, and John Page Rawlings, Esquire.